UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ROBERT A. MAFARA, JR.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. 2:22-cv-02142-EJY<br><br>**ORDER** |

Robert A. Mafara, Jr. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") finding he was not disabled. ECF No. 13. The Commissioner filed a Response and Cross-Motion to Affirm (ECF Nos. 17, 18), and Plaintiff filed a Reply (ECF No. 19).

**I.     BACKGROUND**

There is no dispute that Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income with the Social Security Administration that was initially denied, denied on reconsideration, and denied by the Administrative Law Judge ("ALJ"). Administrative Record ("AR") 703-18, 625-33, 526-37. There is also no dispute that the Appeals Council denied review of the ALJ's decision rendering that decision the final decision of the agency. AR 1-4. Thus, this Court has jurisdiction over this action. 42 U.S.C. §§ 405(g), 1383(c).

**II.    STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla." More than a scintilla of evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Biestek v. Berryhill*, -- U.S. --, 139 S.Ct. 1148, 1154 (2019)). In reviewing the Commissioner's alleged errors, the Court must weigh "both the

evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (internal citations omitted).

"When the evidence before the ALJ is subject to more than one rational interpretation, … [the court] must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). However, a reviewing court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted). And, a court may not reverse an ALJ's decision based on a harmless error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## III.  ESTABLISHING DISABILITY UNDER THE ACT

To establish whether a claimant is disabled under the Social Security Act, there must be substantial evidence that:

1.  the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and

2.  the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A). "If a claimant meets both requirements, he or she is disabled." *Id*. (internal quotations omitted).

The ALJ uses a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (internal citation omitted); 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett*, 180 F.3d at 1098.

The five steps consider:

> Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. 20 C.F.R. § 404.1520(b).
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. 20 C.F.R. § 404.1520(c).
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. § 404.1520(d).
>
> Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. 20 C.F.R. § 404.1520(e).
>
> Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits. *Id*.

**IV.   SUMMARY OF AND FACTUAL ISSUES RELATING TO THE ALJ'S DECSION**.

The ALJ found Plaintiff met the insured status requirements of the Social Security Act (the "SSA" or the "Act") through September 30, 2019, Plaintiff did not engage in substantial gainful activity since March 1, 2018, which is Plaintiff's alleged onset date of disability, and Plaintiff has the following severe impairments: Bipolar I Disorder; Generalized Anxiety Disorder; Post Traumatic Stress Disorder; Borderline Personality Disorder; and Obesity. AR 528-29. The ALJ

stated "[t]he above medically determinable impairments significantly limit the ability to perform basic work activities as required by S[ocial] S[ecurity] R[egulation] 85-28." AR 529.

At step 3 of the ALJ's analysis he found Plaintiff's impairments, whether collectively or individually, do not meet or medically equal the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). AR 529. Focusing on Plaintiff's mental health impairments—the only impairments at issue in this case—the ALJ found Plaintiff's limitations did not meet the "paragraph B" criteria.[1] Specifically, and in the absence of citation to a single medical opinion or report, the ALJ based this decision on Plaintiff's January 22, 2019 Function Report (the "Function Report"). AR 740-747. The ALJ found Plaintiff suffers (1) only mild limitations in understanding, remembering, or applying information, (2) moderate limitations in interacting with others, (3) moderate limitations with respect to his ability to concentrate, persist, or maintain pace, and (4) moderate limitations with respect to his ability to adapt or manage himself. AR 529-530.

On page one of the Function Report, Plaintiff states he has "difficulty communicating with others (email, face to face or otherwise)." AR 740. Plaintiff reports he never pays bills, cannot handle a savings account or checkbook, goes to UNLV "once a week, as much as … [he] can"; but also that he "actively stopped going out to avoid any and all social events." AR 744-745. Plaintiff further reported he has trouble with short term memory; does not take showers, shave or brush his teeth unless he is told to do so; does not prepare meals; cannot go out alone because he has fear of the outside world; has "stunted social ability"; his condition affects talking, memory, completing tasks, concentration, understanding, getting along with others; he can pay attention for 30 minutes at a time; he does better with written than oral instructions; gets along "well enough" with authority figures; has problems getting along with family, friends, and neighbors; cannot always drive a car because he hears voices; can play video games, board games, watch TV and read "weekly, not well";

---

[1] Paragraph B criteria refers to a subsection of listings—12.04, 12.06, and 12.15—providing the functional criteria that the Social Security Administration assesses to determine how a plaintiff's mental disorder limits their functioning. *See Medial/Professional Relations: Disability Evaluation Under Social Security, Social Security Administration*, http://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm. To satisfy the "paragraph B" criteria, "the mental impairment must result in at least one extreme or two marked limitations in a broad area of functioning, which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves."

4

and he has a fear of the outside world. AR 743-746. In closing, Plaintiff states that he has "extreme difficulty leaving … [his] bed in the morning. … [And he] find[s] the outside word terrifying and tr[ies] not to leave home." AR 747.

Despite the above, the ALJ states, without qualification of any kind, Plaintiff is able to drive, watch TV, read, play games, use the internet, handle his own medical care, handle personal hygiene, and get along with caregivers. AR 530. Again, without a citation, the ALJ asserts "the record fails to show any mention of distractibility and … inability to complete testing that assesses concentration and attention"; and, "objective evidence in the record showed the … [Plaintiff] to have appropriate grooming and hygiene, no problem getting along well with providers and staff, normal mood and affect, and no problems with temper control." *Id.* The ALJ concludes that because Plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'extreme limitation, the 'paragraph B' criteria are not satisfied." *Id.*

In preparation for step 4, the ALJ concluded Plaintiff has the residual functional capacity ("RFC") "to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except" as limited by Plaintiff's ability "to understand, remember, and carry out simple instructions and procedures," "sustain adequate attention, concentration, and pace to complete simple tasks," "interact with coworkers and supervisors occasionally," and "unable to interact with the general public." AR 531. After reciting Plaintiff's mental health diagnoses, the ALJ, once again cites the Function Report (Exhibit 2E), and states Plaintiff can carry "out adaptive activities[] such as heat[ing] up leftovers, perform some household chores, drive a car, shop in stores, count change, and take care of his grooming and hygiene." AR 531. Of course, Plaintiff's Function Report is inconsistent, in part, with the ALJ's summary. AR 743-747. The Function Report states Plaintiff must be told to take care of grooming and hygiene, he cannot always drive because he hears voices, he can do dishes and check the PH in the pool, does not prepare his own meals but he eats leftovers or buys food, he can shop once or twice a month, is "afraid of money, but recognize[s] its importance," and has "stopped going out to avoid any and all social events." AR 742-743, 745-746.

At this step, the ALJ refers to medical reports that he says outweighs the reports of Plaintiff's more severe limitations asserted by his parents, sister, and friends. AR 531-532. The ALJ next

quickly summarizes Plaintiff's brief periods of employment and then states that while Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; … the … [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 532.

Citing to two substantively duplicate reports by Jack Araza, Ph.D., and two substantively duplicate reports Ana Olivares, Psy.D., the ALJ states:

> Araza … opines … the [Plaintiff] has mild limitation in understanding, remembering or applying information, but at reconsideration … Olivares opines that he has moderate limitations in understanding, remembering, or applying information (Exhibit 3A, Exhibit 4A, Exhibit 9A, and Exhibit 10A).[2] Both Dr. Araza and Dr. Olivares opine that the … [Plaintiff] has moderate limitation in interacting with others, moderate limitation in concentrating, persisting, or maintaining pace, and moderate limitation in adapting or managing oneself.

AR 532-533. The ALJ notes (without citation) that Dr. Araza's findings regarding Plaintiff's "clinical issues reduce his ability, but he remains capable of simple instructions on a sustained basis[, and] responds appropriately to his doctor and has had limited but past success with limited public/coworker contact." AR 533. Dr. Olivares also states Plaintiff "is able to interact appropriately in brief and infrequent interactions" (AR 603), while opining, "[o]verall, … [Plaintiff] deemed capable of PRT/MRFC w/no contact w/public and limited contact with all others …." *Compare* AR 600.

The ALJ also summarizes a clinical assessment performed by Sarah Ahmad, Psy.D. on May 21, 2021. AR 533. The ALJ cites Dr. Ahmad's "paragraph B" impairment findings stating Plaintiff "has moderate impairment in his ability to interact appropriately with supervisors and coworkers as evidenced by his lack of reciprocal and spontaneous conversation with her, historical interactions, and in [sic] ability to develop and maintain friendships." *Id*. The ALJ notes Dr. Ahmad found Plaintiff is unlikely to "ask for help when needed," "may have significant trouble engaging in

---

[2]   Exhibits 3A and 4A are authored by Dr. Araza and are dated 9/28/2020. Other than the claim numbers and four words appearing in Exhibit 3A at AR 581 ("your age and education") and three words in Exhibit 4A at AR 592 ("and work experience") these reports are identical. Exhibit 9A and 10A are authored by Dr. Olivares and are dated 7/15/2021. These reports are also identical except for claim numbers and ministerial entries. *Compare* AR 597-605 and AR 606-614.

6

teamwork to achieve tasks, communicating in an efficient manner, and engaging in social interactions." AR 533-534. The ALJ also notes that Dr. Ahmad opined Plaintiff suffers from "severe impairment in his ability to interact appropriately in public …." *Id*.

The ALJ found Drs. Araza and Olivares' reports "generally persuasive" and "Dr. Ahmad's opinion … credible and persuasive." *Id*. Noting that Plaintiff "attended medication management for bipolar 1 disorder, current or most recent episode mixed, severe with psychosis, generalized anxiety disorder, rule out posttraumatic stress disorder, and rule out borderline personality disorder," the ALJ stated a "rule out diagnosis is 'probable' or 'suspected' but not confirmed as the examiner is unwilling to commit to it without further confirmation." AR 534.

As discussed in greater detail below, the ALJ incorrectly notes that Plaintiff "has no history of psychiatric hospitalization, or consistent individual or group counseling or psychotherapy." *Id*. It is this statement upon which the ALJ relies to conclude "[t]he lack of treatment is wholly inconsistent with … [Plaintiff's] allegations of disabling mental symptoms." *Id*. The ALJ then summarizes Plaintiff's long history of treatment, stressing (again incorrectly as discussed below) Plaintiff's alleged failure to seek out and attend psychotherapy. *Id*.

Despite the findings by Dr. Ahmad of a severe impairment in his ability to interact appropriately in public with which the ALJ did not take issue, the ALJ concluded Plaintiff's mental health impairments were "not so severe as to prevent … [Plaintiff] from understanding, remembering, and carrying out simple instructions and procedures, sustain[ing] adequate attention, concentra[ing] …, and [maintaining] pace to complete simple tasks, with occasional interaction with coworkers and supervisors and no interaction with the general public." AR 535.

After concluding he could identify no past relevant work done by Plaintiff to assess, and relying on testimony of the vocational expert, the AJL found Plaintiff could perform the requirements of hand packer, industrial cleaner, and kitchen helper. AR 536. The ALJ rejected all "additional hypothetical questions posed to the vocational expert … including that … [Plaintiff] would be off task 15% of an 8-hour workday …" *Id*. Thereafter, the ALJ concluded Plaintiff is not disabled. AR 537.

V. **DISCUSSION.**

    A.    <u>The Substantial Evidence Standard, and Consideration of New Evidence Presented to the Appeals Council.</u>

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quoting *Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

Because Plaintiff applied for benefits in 2020, certain regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. Notably, an ALJ cannot reject a medical opinion "without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, it would be error to deem an opinion persuasive but yet fail, without explanation, to omit limitations from the opinion in the RFC. *See Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) ("By disregarding [medical] opinions and making contrary findings, [the ALJ] effectively rejected them. His failure to offer reasons for doing so was legal error."); *Ismael A. v. Berryhill*, Case No. EDCV 17-02458-AFM, 2018 WL 6697178, at *4 (C.D. Cal. Dec. 19, 2018) (concluding that an ALJ erred by purporting to accept a doctor's opinions but then failing to include, without explanation, opined limitations in the RFC).

Further, based on the Court's review of a series of decisions by the Ninth Circuit and district courts within the Circuit, the Court concludes (1) the new evidence presented by Plaintiff to the Appeals Counsil should be considered by this Court under "sentence four or sentence six of 42 U.S.C. § 405(g)," and (2) the Court must determine if that "evidence undermines the ALJ's decision" in this case.[3] *Williams v. Berryhill*, Case No. C17-5885-JCC-BAT, 2018 WL 6737511, at

---

[3]    Under 20 C.F.R. § 404.970(a)(5), the Appeals Council will review a case at a party's request where it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." "The Appeals

*2 (W.D. Wash. Apr. 19, 2018). The court in *Williams* rejected the argument that the new evidence was not part of the record for review "because the evidence was properly presented during agency proceedings …[,] the evidence … [was] undisputed, and … [the evidence] was referenced in the administrative record." *Id*. at 3. Here, Defendant offers no argument suggesting new evidence at issue was not properly presented on appeal, the evidence is disputed, or that it is not part of the administrative record. ECF No. 17, *generally*. Thus, the Court finds the new evidence provided by Nurse Practitioner Zelluyah Gaitho (N.P. Gaitho" or "Gaitho") and timely submitted to the Appeals Council is part of Plaintiff's record for review.

Moreover, the court in *Williams* explained that although the Appeals Council claimed not to have considered the evidence, that claim was contradicted by the Council's statement that it found the "evidence does not show a reasonable probability that it would change the outcome of the decision." *Williams*, 2018 WL 6737511, at *3 (internal citation omitted). Again, as in *Williams*, the Appeals Council in this case states: "[w]e find this evidence [that is, the Mental Residual Function Capacity assessment completed by … [N.P.] Gaitho … dated February 18, 2022" and two "Physician's Statement – Disabled Dependent," completed on February 18, 2022 and April 21, 2022 respectively, do "not show a reasonable probability that it would change the outcome of the [ALJ's] decision." AR 2. This statement plainly belies the notion that the evidence was not considered as a determination of "reasonable probability" that new evidence would not change the outcome of the ALJ's decision could not logically occur without consideration of that very evidence.[4]

Defendant argues the Court does not have jurisdiction to review the decision of the Appeals Council (ECF No. 17 at 7), but that is not what the Court is doing here. The Court is considering evidence presented to the Appeals Council to determine whether the ALJ's decision—the final decision of the Commissioner—is supported by substantial evidence, including evidence submitted to the Appeals Council just as the court did in *Williams*. As for Defendant's argument that the new

---

Council will only consider additional evidence ... if [the claimant] show[s] good cause for ... submitting the evidence." 20 C.F.R. § 404.970(b). "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Commissioner of Social Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012)

[4] The court in *Williams* further found that if remand is to be ordered, sentence four of 42 U.S.C. § 405(g) properly applies. *Williams*, 2018 WL 6737511, at *3. This Court agrees.

9

evidence would not change the outcome of the case, that argument applies only to whether the Appeals Council should have considered the evidence—again, a decision this Court is not reviewing or analyzing. *See id*. at 8. The decision below is only with respect to consideration of whether substantial evidence supports the ALJ's decision or whether, based on various issues raised, remand is appropriate for purposes of additional proceedings.

B. <u>The ALJ's Decision is Not Supported by Substantial Evidence.</u>

The Court starts with Plaintiff's contention that the ALJ's RFC fails to take into account clear record evidence that Plaintiff is "unable to be around strangers," engages in isolating behavior, avoids the public, and requires family to accompany him when in public places. ECF No. 13 at 10. Pointing to Dr. Ahmad's opinions, Plaintiff argues "the ALJ inexplicably found Plaintiff could perform such task[s]" as interacting with coworkers and supervisors. *Id*.

Dr. Ahmad found Plaintiff had a moderate impairment in his ability to interact appropriately with supervisors and coworkers. AR 1047. The ALJ adopted this finding in his RFC finding Plaintiff could interact "occasionally" with such individuals. AR 531. The Social Security Administration's definition of a moderate limitation "is found in Form HA-1152-U3, which states a "moderate" limitation as in which "[t]here is more than a slight limitation in this area, *but the individual can still function satisfactorily*." Office of Disability Adjudication and Review, Social Security Administration, Form HA-1152-U3, Medical Source Statement of Ability to Do Work-Related Activities (Mental) (emphasis added). Further, "occasionally" means occurring from very little up to one-third of the time. SSR 83-10. Thus, a moderate limitation is not necessarily disabling. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1107 (9th Cir. 2017).

However, as explained below, the ALJ's finding that Plaintiff's failure to be hospitalized or engage in individual or group therapy was inconsistent with Plaintiff's allegations of disabling mental symptoms (AR 534) was insufficient to discount Plaintiff's report of disability and, more importantly, inconsistent with the record. In *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996), the court also instructs "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Id*. (internal citation omitted). Further, the U.S. District Court for the Western District of Washington recently explained:

> [T]he fact that a claimant manages to be cooperative with her healthcare providers does not contradict those providers' opinions that the claimant is severely limited in her ability to interact with coworkers, supervisors, or the general public. Plaintiff's healthcare providers are professionals trained to deal with mentally and physically ill or disabled patients. Furthermore, a medical treatment relationship is not like the relationship a worker has with her coworkers, supervisors, or the general public. The goals and nature of interacting with healthcare providers is different. The Social Security Administration's regulation concerning evidence of functioning in supportive situations is instructive here: "Your ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate your ability to complete tasks in the context of regular employment during a normal workday or work week." 20 C.F.R. 404, Subpart P, App'x 1, § 12.00(C)(6)(b) (2016). Interactions with treatment providers are likely to be "less demanding or more supportive than typical work settings" and thus do not demonstrate an ability to work with coworkers, supervisors, or the general public in a work setting. *Id.*

*Tina R. v. Comm'r of Soc. Sec. Admin.*, Case No. C18-1041-JLR, 2019 WL 1417301, at *5 (W.D. Wash. Mar. 29, 2019).

In this case Plaintiff repeatedly and consistently reported he has "a fear of the outside world" (AR 743); he "find[s] the outside world terrifying" (AR 747); he has "difficulty … getting along with others"; "fear[s] the public" [AR 572; *see also* 574]; can have "no contact with [the] public and limited contact w[ith] all others …." (AR 600—finding by Dr. Olivares); "won't leave the house anymore (AR 776—report by Plaintiff's mother); he "hasn't left the house in months" (AR 803); has "fears of being out in public, which causes anxiety which leads into panic attacks …." (AR 804); and has "fears … going to the gym or even taking a walk" (AR 1076—January 27, 2021 report by N.P. Gaitho). While these statements alone are not necessarily a basis for finding a lack of substantial evidence to support the ALJ's finding that Plaintiff is capable of occasional interaction with coworkers and supervisors, the ALJ's decision is further undermined by his incorrect statements regarding Plaintiff's psychotherapy and hospitalization history.

Specifically, the ALJ incorrectly states Plaintiff failed to seek "consistent individual … counseling or psychotherapy." AR 534. But progress notes from N.P. Gaitho dated September 25, 2019 through September 8, 2021 are contrary to this conclusion as each states "supportive psychotherapy" was provided to Plaintiff. AR 998-1041, 1050-1090 (initially discussing the need for and then the fact of providing "supportive psychotherapy" on October 9, 2019, October 28, 2019,

November 18, 2019, December 16, 2019, February 5, 2020, March 4, 2020 (on this date reporting a visit to a doctor on February 10, 2019 for back pain, being called fat and a drug addict, having a panic attack in the doctor's lobby, collapsing, and not going out of the house until his next appointment with Gaitho), May 6, 2020, June 3, 2020, July 8, 2020, September 9, 2020, December 9, 2020, January 15, 2021, January 27, 2021, March 10, 2021, April 7, 2021, April 21, 2021, May 25, 2021, July 13, 2021, and August 18, 2021). Thus, when the ALJ concludes, without a citation to evidence, that Plaintiff's "lack of treatment is wholly inconsistent with his allegations of disabling mental symptoms" (AR 534) that statement is contradicted by the evidence.

The ALJ also states he must develop Plaintiff's "complete medical history for at least the 12 months preceding the month in which the application was filed unless there is a reason to believe that development of an earlier period is necessary" and that the ALJ "considered all of the medical evidence on file." AR 532. Later the ALJ states Plaintiff has "no history of psychiatric hospitalizations." AR 534. Yet, Dr. Araza and Oliveras' evaluations (each relied on by the ALJ) show Plaintiff was hospitalized twice with serious psychiatric symptoms. AR 573, 574, 576 (Dr. Araza's evaluation stating Plaintiff was admitted twice in 2017 at least once under Nevada's "L2K" laws[5]), 598 (Dr. Olivares' evaluation stating Plaintiff was admitted on "03/29/17-04/01/17 L2k for schizophrenia, experiencing AH [audio hallucinations]. 08/10/17-08/15/17 voluntary admit due to schizophrenia."). It is undisputed that Plaintiff's disability onset date was March 1, 2018, all within a year of Plaintiff's hospitalizations. *Compare id*. at AR 526.

Overall, the ALJ's mischaracterization of the record is troubling and establishes a foundation for finding a lack of substantial evidence warranting remand. Indeed, when an ALJ mischaracterizes the record such that it appears the ALJ did here in an effort to reject evidence favorable to Plaintiff's claim of disability, this alone can warrant remand. *See*, e.g., *Regennitter v. Commissioner*, 166 F.3d 1294, 1297 (9th Cir. 1999). Further, the Court is unable to conclude that the ALJ's errors were harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("an ALJ's error is harmless where it is inconsequential to the ultimate non-disability determination.") (internal citations and quotations

---

[5] Allowing a 72 hour hold for a person suffering a mental health crisis as defined by NRS 433A.0175 and NRS 433A.115.

omitted). On the present record, the Court is unable to evaluate the ALJ's decision as his failures to properly characterize Plaintiff's individual treatment record, consistent reports regarding fears of the outside world, and hospitalizations shortly before the onset date of Plaintiff's alleged disability are reported incorrectly. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (when the "record before agency does not support agency action ... or reviewing court simply cannot evaluate challenged agency action on basis of record before it, proper course ... is to remand to agency for additional investigation or explanation.").

Finally, the ALJ's decision never once mentions N.P. Gaitho by name, (*see* AR 526-537), despite having treated Plaintiff over a ten-plus month period during the relevant time period (although he does reference her notes at Exhibits 10F and 12F), does not state whether he found her notes and opinions persuasive or unpersuasive, and did not have the opportunity to consider the February 2022 Mental Residual Function Capacity Assessment completed by Gaitho. AR 526-537. New evidence, such as that provided by N.P. Gaitho in February 2022 relates to the period before the ALJ's decision given the new evidence pertains to the same ongoing impairments. *Taylor v. Comm'r of Social Security Administration*, 659 F.3d 1228, 1232-33 (9th Cir. 2011). Gaitho's assessment was completed just one month after the last appointment attended by Plaintiff with Gaitho and less than two months after the ALJ issued his opinion. *Compare* AR 20 at 23 and AR 537. The Appeals Council clearly considered the content of the Assessment when it found the Assessment would not effect the outcome of the ALJ's decision. AR 2, *see also Williams*, 2018 WL 6737511, at *4. The Assessment explained why Plaintiff does not participate in group therapy (can't be with stranger-a reason consistent with Drs. Araza and Olivares' opinions), and found Plaintiff suffers marked and extreme limitations in every limitation rated. AR 21-22. *Bergmann v. Apfel*, 207 F.3d 1065, 1070 (8th Cir. 2000) (holding post hearing evidence required remand because it concerned deterioration of "relatively longstanding" impairment).

In light of the record as a whole the Court finds the ALJ's mischaracterization of evidence together with the new evidence in the Mental Residual Functional Capacity Assessment by N.P. Gaitho that is part of the record and should be considered renders the ALJ's decision unsupported by substantial evidence. Thus, remand is warranted.

### VI. Order

Because the circumstances of this case suggest that further administrative proceedings could remedy the ALJ's errors, remand is appropriate. Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and Remand (ECF No. 13) is GRANTED.

IT IS FURTHER ORDERED that Defendant's Cross-Motion to Affirm (ECF No. 17) is DENIED.

IT IS FURTHER ORDERED that the Court enter judgment in favor of Plaintiff reversing and remanding this matter to the Commissioner of Social Security for further proceedings consistent with this Order under sentence four of 42 U.S.C. § 405(g).

IT IS FURTHER ORDERED that the Clerk of Court is directed to close this case.

Dated this 30th day of January, 2024.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE